```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION
```

DONNY D. INGRAM,                    :
                                    :
    Plaintiff,                      :
                                    :
vs.                                 :
                                    :    CIVIL ACTION 15-638-M
CAROLYN W. COLVIN,                  :
Social Security Commissioner,       :
                                    :
    Defendant.                      :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12).  The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 17).  Oral argument was waived in this action (Doc. 18).  After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED.**

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984).

At the time of the most recent administrative hearing, Ingram was fifty-two years old, had completed a ninth-grade education (Tr. 44), and had previous work experience as a floor layer helper (Tr. 43-44).  Plaintiff alleges disability due to lumbar osteoarthritis facet disease, lumbar degenerative disc disease, status post rotator cuff repair, osteoarthritis of both hands, status post anterior cervical discectomy and fusion, post-surgical change of right shoulder (Doc. 12 Fact Sheet).

The Plaintiff applied for SSI on July 9, 2012, asserting a disability onset date of July 11, 2010 (Tr. 20, 184-90).  An Administrative Law Judge (ALJ) denied benefits, determining that although he could not return to his past relevant work, Ingram was capable of performing light work (Tr. 20-28).  Plaintiff requested review of the hearing decision (Tr. 14-15), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Ingram alleges the single claim that the ALJ failed to consider certain, specific evidence regarding his limitations (Doc. 12).

2

Defendant has responded to—and denies—this claim (Doc. 13).  The relevant evidence of record follows.[1]

On December 17, 2009, x-rays of Ingram's lumbar spine showed mild wedge deformity of the L2 vertebrae consistent with a compression fracture and mild degenerative disc space narrowing at L5-S1 with moderate osteoarthritic facet changes; the diagnosis was mild degenerative rotatory lumbar levoscoliosis (Tr. 260).

On January 18, 2011, Dr. Jeffrey Conrad, Orthopaedist, evaluated Plaintiff's right shoulder; an MRI report revealed a questionable fraying of the rotator cuff (Tr. 319-20).  Ingram experienced pain all the time in his entire shoulder with point pain over the anterior portion of his shoulder although he had undergone physical therapy and pain management; he took no medications.  X-rays showed mild degenerative changes at the AC joint and mild distal clavicle osteolysis.  On examination, Conrad noted passive and active range of motion (hereinafter *ROM*) were significantly limited; he could not abduct his arm past ninety degrees while external rotation was significantly limited as well.  Strength could not be tested because of the pain.  The left shoulder had no limitations.  The Orthopaedist's assessment was shoulder strain, questionable adhesive

---

[1]As Plaintiff has alleged a disability onset date of July 11, 2010, the Court will not review Dr. Alan Sherman's examination of December 17, 2009 (Tr. 254-259).

3

capsulitis, for which he gave an injection and prescribed physical therapy. On February 15, 2011, Conrad noted that Ingram had made little progress with therapy and that his ROM was difficult secondary to pain; Vicodin[2] was prescribed, though Plaintiff wanted a stronger pain medication (Tr. 315). On May 11, the Orthopaedist repaired Plaintiff's partially-torn rotator cuff without complication (Tr. 308-09). As of June 13, Ingram reported that the shoulder was doing so well that he had stopped his Polar Care therapy; however, he had started experiencing extreme pain in his neck, radiating down into his right upper extremity, accompanied by numbness and tingling (Tr. 305). Dr. Conrad noted ROM limitations of the neck with extension, rotation, and flexion; x-rays showed some degenerative changes. Therapy was prescribed.

On July 15, Ingram was examined by Orthopaedist Clinton W. Howard, IV for complaints of pain in his right arm and neck, at a pain level of ten, and significant weakness in the arm (Tr. 304). On exam, the Doctor noted weakness of elbow flexion, extension, and grip with a Positive Spurling to the right though negative to the left; x-rays showed good lordosis, but no evidence of significant spondylolisthesis. An MRI of the cervical spine showed the following: discogenic disease and

---

[2]**Error! Main Document Only.***Vicodin* is a class three narcotic used "for the relief of moderate to moderately severe pain." *Physician's Desk Reference* 1366-67 (52nd ed. 1998).

4

mild spondylosis with mild bony foraminal encroachment on the right at C5-6 and left at C6-7; no evidence of disc herniation; and a lesion in the T4 vertebral body, likely reflecting an atypical hemangioma (Tr. 303).  A prescription for Lortab[3] was written (Tr. 302).  On August 3, 2011, a bone scan revealed mild increased uptake in both shoulders, felt to be degenerative in origin and greater on the right, and increased uptake at the level of L3 or L4 on the right, thought to be arthritic (Tr. 301).  On September 1, Plaintiff complained of significant neck pain and right arm pain; Dr. Howard noted that the MRI results corresponded to his symptoms and ordered physical therapy, cervical traction, and pain medications (Tr. 300).  Physical therapy began on September 13 and was to be conducted three times a week for four weeks (Tr. 298).  On September 22, Ingram complained of significant right arm pain, down into his hand, with some weakness in the shoulder; he had forward flexion to about eighty degrees (Tr. 296).  On October 12, the Physical Therapist noted, in his last report, that Plaintiff indicated that he had a significant reduction in pain and increase in mobility with his chief complaint being mild, right trapezius pain; he had full cervical ROM in all planes with pain while right shoulder elevation was ninety degrees (Tr. 295).  Cervical

---

[3]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

strength was full while right shoulder strength was 2+/5. On October 17, 2011, a CT of the cervical spine demonstrated no acute osseous injury and mild degenerative disease (Tr. 287). On November 10, Dr. Howard performed a C5-6, C6-7 anterior cervical discectomy and fusion with no complications (Tr. 291-92). On November 23, Ingram had mild neck pain, but normal strength in his bilateral upper extremities; the Orthopaedist prescribed a Kenalog injection, Tylox,[4] and Flexeril[5] (Tr. 284). On December 7, Plaintiff had no significant arm pain, though there was some posterior cervical pain and paratrapezial pain; Lortab 10 was prescribed (Tr. 283). On January 3, 2012, Ingram reported no neck pain; Howard said he could return to work (Tr. 282).

On January 10, Plaintiff told Dr. Conrad that he had pain and discomfort when lifting his right shoulder over his head though, overall, the pain was better; strength was intact with abduction and external and rotation (Tr. 281). Abducting his arm past 120° caused pain and discomfort, though strength was intact up to that point.

On February 8, 2012, Orthopaedist Howard noted that

---

[4]**Error! Main Document Only.**Tylox is a class II narcotic used "for the relief of moderate to moderately severe pain". *Physician's Desk Reference* 2217 (54th ed. 2000).

[5]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions." *Physician's Desk Reference* 1455-57 (48th ed. 1994).

6

Plaintiff had no significant cervical neck pain, though there was some shoulder pain with normal strength in that extremity; the Doctor found that Ingram had reached maximum medical improvement, indicated that he had seven percent disability of the back with full body disability of eight percent, and that he could continue with light duty work (Tr. 271-72).

Plaintiff also saw Orthopaedist Conrad on February 8, 2012 for his shoulder; he could abduct the shoulder to about 110° with his strength intact (Tr. 270). Ingram was tender to palpation over the long head of the biceps tendon. On February 29, Dr. Conrad successfully performed a fluoroscopic-guided arthrogram of the right shoulder (Tr. 321-23).

On March 1, Dr. Howard gave Plaintiff a Kenalog injection for significant low back and right leg pain; he also gave him a muscle relaxer (Tr. 269).

On March 6, Plaintiff complained of right arm pain, shooting down into his leg and foot for which Conrad prescribed Talwin;[6] the Doctor, looking at the MRI, noted some tendinosis of the rotator cuff, but no full thickness tearing (Tr. 267-68). On April 4, the Orthopaedist found that Ingram had reached maximum medical improvement; he noted that Plaintiff could elevate his shoulder to ninety degrees on his own, but that the

---

[6]*Talwin* is an opioid analgesic used to treat moderate to severe pain. *See* https://www.drugs.com/cdi/talwin.html

7

arm could be pulled to 130-140° (Tr. 266).  Strength was intact with external rotation and belly press testing.  A functional capacity evaluation (hereinafter *FCE*) was ordered.

On April 9, 2012, an FCE was conducted by Gulf Coast Therapy; on a ten-point scale, Ingram rated his current pain as five with his worst pain over the prior thirty days to be an eight (Tr. 310-14).  Plaintiff stood for thirty minutes, rating his pain at five, walked two hundred yards in two minutes, rating his pain at eight, and lifted ten pounds from the floor, rating his pain at five (Tr. 311).  Ingram was instructed to perform a number of repetitive activities to assess consistency of movement through an expected ROM within an expected period of time; most movements were exaggerated or broken while effort was considered questionable.  Plaintiff complained of low back pain during a treadmill test and while doing repetitive squats, after which he reported being dizzy and light-headed; he refused to perform squat and kneel activities due to bilateral leg cramping (Tr. 312).  Ingram had reduced right-hand grip-strength; Plaintiff did not complete any of the dynamic lifting tests, giving only questionable effort (Tr. 313).  The Occupational Therapist noted inappropriate illness behavior in two of two categories, a pain range of five-to-ten, and a poor aerobic fitness level; she found Plaintiff qualified to do sedentary work, though lifting over five times per day would put him at

8

significant medical risk (Tr. 314).

On April 19, 2012, Dr. Conrad went over the FCE and noted symptom magnification; he found that Plaintiff could abduct and forward flex his shoulder to 110° with excellent strength that was at least 4+/5 (Tr. 265). The Orthopaedist found that Ingram had five percent upper extremity permanent impairment and three percent impairment of the whole body; he recommended limited overhead lifting. On May 23, Ingram complained of pain and discomfort in his shoulder in lifting his arm; Conrad rejected prescribing narcotics but did prescribe Ultram[7] (Tr. 263).

On June 25, Plaintiff reported mild neck pain on the left but did not report any significant arm pain; he was given a steroid shot by Dr. Howard (Tr. 262).

On October 13, Dr. Zakiya Douglas examined Ingram, finding him cachectic and in discomfort; he had some difficulty getting on and off the examination table (Tr. 274-78). Plaintiff had a stable, wide-based gait; he was unable—or unwilling—to perform a heel or toe test. The Doctor performed an ROM examination for the entire body, noting limitation in the right shoulder along with tenderness to palpation along the left trapezius area; there was pain in both hips in straight leg testing with crepitus in both knees. Ingram had full strength in all

---

[7] **Error! Main Document Only.** *Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

extremities though there was muscle wasting and handgrip difficulty, in opposition, in the right hand; manipulation in both hands was normal.  Dr. Douglas's diagnoses were as follows: osteoarthritis of the knees bilaterally; torticollis of the left neck causing muscle spasm; and right shoulder pain, likely from prior rotator cuff injury.

On September 23, 2013, Plaintiff went to Springhill Medical Center with complaints of right testicle pain and right knee and hip pain, caused by a fall (Tr. 324-30).  X-rays of the knee were normal; x-rays of the hip showed mild degenerative changes of the right shoulder, but no dislocation (Tr. 324-25).  Ingram was found to have bilateral hydroceles[8] with normal blood flow and was prescribed anti-inflammatory medication and Lortab.

On November 12, Plaintiff went to Springhill Medical Center for an abscess on his right forearm; he also had impetigo on his face (Tr. 345-62).  An antibiotic and Lortab were prescribed.

On December 5, Dr. Todd Elmore, Neurologist, examined Ingram and found that he had limited ROM in his cervical spine and right shoulder; he had self-limiting pain behavior (Tr. 332-39).  On motor exam, Ingram had diffuse weakness throughout, giving poor effort; he had subjective decreased numbness in hands and feet.  Reflexes were diminished throughout, but

---

[8]"A hydrocele is a fluid-filled sac surrounding a testicle that causes swelling in the scrotum."  http://www.mayoclinic.org/diseases-conditions/hydrocele/basics/definition/con-20024139

10

present; gait and station were normal.  There was no evidence of nerve damage.  Elmore found Plaintiff capable of performing a sedentary job, though "[h]e could probably work any sort of manual activity as long as it did not involve any overhead movements with his right arm or lifting greater than 50 lbs" (Tr. 334).  The Neurologist went on to note that "[o]ther than limited range of motion in his right shoulder, all his other complaints [were] entirely subjective in nature" (Tr. 334).  Dr. Elmore complete a physical capacities evaluation in which he indicated that Ingram was capable of sitting four, standing three, and walking two hours at a time while able to sit eight, stand six, and walk five hours during an eight-hour day (Tr. 339).  The Neurologist further indicated that Plaintiff could lift ten pounds continuously, twenty-five pounds frequently, and fifty pounds occasionally and could carry ten pounds continuously, twenty pounds frequently, and twenty-five pounds occasionally; he found him capable of using both hands for simple grasping, pushing and pulling of arm controls, and fine manipulation.  Ingram would have no trouble using leg controls.  The Doctor also found Plaintiff able to bend, squat, crawl, and climb occasionally and reach frequently.

    This concludes the Court's summary of the evidence.

    In bringing this action, Ingram claims that the ALJ failed to consider certain, specific evidence regarding his

11

limitations. Plaintiff specifically references the FCE completed by Gulf Coast Therapy on April 9, 2012 (Doc. 12; *cf.* Tr. 310-14). The Court notes "no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Commissioner, Social Security Administration*, 771 F.3d 780, 782 (11th Cir. 2014) (*quoting Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

The Court finds that Plaintiff is correct in asserting that the ALJ did not review the FCE in his opinion. Defendant admits as much, but argues that it would not have changed the ALJ's decision (Doc. 13).

In his determination, the ALJ found that Plaintiff had the residual functional capacity to perform light work,[9] but was limited in his ability to crouch, stoop, and kneel only occasionally (Tr. 23). Furthermore, he could not climb ladders,

---

[9]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b) (2015).

ropes, or scaffolds and could not crawl. He could not be exposed to dangerous heights or machinery.

The ALJ first discredited Ingram's own testimony of pain and limitation (Tr. 24, 26), a finding gone unchallenged in this action. The ALJ also gave great weight to the examination notes and conclusions of Neurologist Elmore who found Plaintiff capable of performing "any sort of manual activity as long as it did not involve any overhead movements with his right arm or lifting greater than 50 lbs" (Tr. 26-27; *cf.* Tr. 334). The Court further notes that the conclusions of Dr. Douglas support Dr. Elmore's findings (*see* Tr. 274-78). Dr. Conrad, Ingram's treating Orthopaedic physician found, after reviewing the FCE report, that he was able to return to work, restricting Plaintiff only with regard to overhead lifting (Tr. 265). Ingram's other treating Orthopaedic, Dr. Howard, found that he had reached maximum medical improvement and could continue with light duty work (Tr. 271-72).

The Court further notes that the FCE, although finding that Ingram could perform only sedentary work, was not particularly favorable (Tr. 310-14). His effort was considered questionable and his movements, through the exercises, exaggerated; he refused to perform certain tests. As noted by Dr. Conrad, after reviewing the report, "[t]here was some noted symptom magnification" (Tr. 265).

13

The Court finds, at most, harmless error in the ALJ's failure to discuss the FCE in his determination.  As such, remand of this action would be inappropriate.  *See Reeves v. Heckler*, 734 F.2d 519, 526 n.3 (11th Cir. 1984).  Furthermore, the Court finds that the ALJ's conclusions, regarding Ingram's ability to work, are supported by substantial evidence.

Plaintiff has raised a single claim in bringing this action.  That claim is without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**.  Judgment will be entered by separate Order.

DONE this 28th day of June, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE